Argued and submitted September 10, 1990, reversed and remanded for
reconsideration December 4, 1991

ACCIDENT PREVENTION DIVISION,
*Petitioner,*

*v.*

Ed ASANA,
dba American Sewer and Pipe,
*Respondent.*

(SH-88-825, SH-88-826, SH-88-827,
SH-88-828; CA A62876)

821 P2d 432

Meg Reeves, Assistant Attorney General, Salem, argued
the cause for petitioner. With her on the brief were Dave
Frohnmayer, Attorney General, and Virginia L. Linder, Solic-
itor General, Salem.

No appearance for respondent.

Before Warren, Presiding Judge, and Riggs and Edmonds,
Judges.

EDMONDS, J.

**EDMONDS, J.**

Accident Prevention Division (APD) seeks review of a Workers' Compensation Board order that modified penalties and dismissed citations that APD issued to employer for violations of various safety rules. ORS 654.290; ORS 183.482. We reverse.[1]

Employer is engaged in the repair and installation of sewer pipes and related activities. APD issued him citations for violations of numerous safety rules that allegedly occurred in September, October, and November, 1988. Employer requested a hearing. ORS 654.290(2)(a). The referee dismissed some of the citations and, for the remaining ones, reduced APD's recommended penalties below the amounts established by OAR 437-01-145. APD first assigns error to the reduction of the assessed penalties. penalties.

■ ORS 654.086(1) authorizes APD's director to assess various civil penalties for violation of any occupational safety or health statute, rule, standard or order. Pursuant to that statute, the agency adopted OAR 437-01-145 and OAR 437-01-165, which establish a schedule for assessing penalties.[2] Under the rules, the severity and probability ratings for any violation are determined by an on-site inspection. OAR 437-01-135; OAR 437-01-140; OAR 437-01-015(41). Once the ratings are determined, the penalty is calculated by using the

---

[1] After this case was submitted and argued, it was abated pursuant to ORAP 8.20(7). The bankruptcy stay was lifted on September 11, 1991.

[2] OAR 437-01-145 provides, in part:

"(1) A penalty shall be assessed for any serious violation and may be assessed for any general violation by considering the penalty established by the intersection of the probability rating and severity rating on the penalty schedule (Table 1). In a case where probability and severity are not appropriate considerations, a penalty may be assessed by considering the facts of the violation.

"(2) Penalty adjustments may be made based upon the employer's current lost workday cases incidence rate, if available, and efforts made during the inspection to correct violations. Penalty adjustments shall not be applied to repeat, willful or failure to correct violations or to any violation which contributed to an injury, illness or death of an employe. Adjustments shall not reduce the penalty to less than the mandatory minimum penalty which has been established by rule. * * *:

"* * * * *

table in OAR 437-01-145. If the penalty is for a repeated violation, it is increased in accordance with OAR 437-01-165(1).[3] When the citations in this case were issued, OAR 437-01-165(2) authorized the penalty to be adjusted.[4]

"TABLE 1 – PENALTY SCHEDULE

| "Probability | | | Severity | |
|---|---|---|---|---|
| | "General Violation | | Serious Violation | |
| | "Low | Moderate | "Serious Physical Harm | Death |
| "Low | 0 | 75 | 150 | 1,000 |
| "Medium | 0 | 300 | 500 | 1,500 |
| "High | 75 | 500 | 1,200 | 2,500 |

"

[3] OAR 437-01-165(1) provides:

"The penalty for a repeat violation shall be computed by *increasing* the penalty for the current violation by the following applicable percentage:

| | "General | Serious |
|---|---|---|
| "1st repeat | +50% | +100% |
| "2nd repeat | +100% | +200% |
| "3rd repeat | Discretion of Administrator | |

"

(Emphasis supplied.)

[4] OAR 437-01-165(2) provided:

"(2) The penalty determined under subsection (1) of this rule may be adjusted by considering the following:

"(a) The time between violations;

"(b) Whether identical or similar machinery is involved;

"(c) Whether the same supervision, crew or locations are involved;

"(d) The proximity to the prior violation; and

"(e) Other extenuating or aggravating circumstances."

Subsection (2) was deleted in 1989, by APD Admin. Order 10-1989. Subsection (3) provided that "[t]he total penalty for a repeat violation shall be not less than $50 nor more than $10,000."

■ APD argues that, under the rules, the referee's reduction of penalties must be within the confines of OAR 437-01-145 and OAR 437-01-165. Specifically, it contends that

> "the Referee's task in assessing a penalty is to find facts on the evidence before him, and from these facts to (1) determine whether the facts support the probability and severity rating assigned to each violation; and (2) determine the number of previous violations. Having done that, the Referee must identify the applicable penalty from Table 1 [of OAR 437-01-145] for the current offense. If it is a first or second repeat violation, the Referee must apply to the current penalty the percentages found in OAR 437-01-165(1) — as adjusted, if appropriate, by the factors listed in OAR 437-01-165(2). If it is a third repeat violation, the Referee reviews the penalty set by the Administrator for abuse of discretion, keeping in mind that the penalty assessed must be reasonable. OAR 438-85-820."

We agree that the referee had no authority to impose penalties less than those mandated by the rules. An agency's action must be consistent with its rules. *Moore v. OSP*, 16 Or App 536, 537, 519 P2d 389 (1974). OAR 437-01-145(1) provides that "a penalty shall be assessed" in accordance with the penalty schedule in table 1 of the rule. OAR 437-01-145(2) provides that penalty "[a]djustments shall not reduce the penalty to less than the mandatory minimum penalty which has been established by rule." Moreover, OAR 437-01-165(1) states that the penalties for repeated violations "shall be increased[.]" Although OAR 437-01-165(2) permitted a referee to "adjust" recommended penalties, it did not authorize the reduction of penalties below the mandatory minimums provided in OAR 437-01-145(1).

The September citation involved two violations that the referee concluded created a high probability of serious bodily harm. Under OAR 437-01-145(1), the minimum penalty for each violation is $1,200. The referee's $1,000 penalty for both violations was too small. The October and November citations concern two violations that APD assessed as creating a medium risk of serious bodily harm and a medium probability of moderate bodily harm, respectively. The referee assessed penalties of $100 and $250. Neither penalty corresponds with any prescribed by OAR 437-01-145(1).

APD also assigns error to the referee's dismissal of allegations of safety violations regarding work in a trench. The referee dismissed the citation, because employer had told his employees to stay out of the unsafe trench until he had returned and, consequently, the referee did not hold employer responsible for their failure to follow his instructions. APD argues that, under ORS 183.470(2),[5] the referee was required to make findings on its contention that employer knew or should have known that his employees would disregard his instruction and work in the trench. ORS 183.470(2) requires the referee to make findings on contested issues of fact and on every ultimate fact that is necessary to the conclusion. The referee's dismissal is predicated on an implicit finding that employer believed that his instructions would be followed. His knowledge, if any, regarding the likelihood that his employees would disregard his instructions bears on that issue and is necessary to the conclusion. The referee should have addressed APD's argument in its findings and explained the relationship between those findings and the conclusion. *Dan McCormack Agency v. Employment Division*, 99 Or App 47, 50, 781 P2d 370 (1989).

Reversed and remanded for reconsideration.

---

[5] ORS 183.470(2) provides:

"A final order shall be accompanied by findings of fact and conclusions of law. The findings of fact shall consist of a concise statement of the underlying facts supporting the findings as to each contested issue of fact and as to each ultimate fact required to support the agency's order."